**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff, the*
*putative FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **PABLO HERNANDEZ, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**GRACIE MEWS LLC, GRACIE-MUSE RESTAURANT CORP., STEVE KREATSOULAS, and MIHAIL KREATSOULAS, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Pablo Hernandez (the "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff is a former line cook at Defendants' diner located in the Upper East Side neighborhood of Manhattan, New York. For his work, despite being a non-exempt employee,

Plaintiff was paid straight-time hourly rates with no overtime premiums for hours worked over forty (40) in a given workweek, and sometimes rates that fell below the minimum wage. Plaintiff and Defendants' other employees also did not receive spread of hours premiums, proper wage notices or wage statements.

2.      Plaintiff brings this action to recover minimum wage and overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiff also brings claims for failure to timely pay wages owed, for unpaid spread-of-hours premiums and for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.      Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants during the NYLL limitations period.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and Defendants' business is located in this district.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7. On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiff:**

8. <u>Plaintiff Pablo Hernandez</u> ("Hernandez") was, at all relevant times, an adult individual residing in Queens County, New York.

9.    Throughout the relevant time period, Plaintiff performed work for Defendants at "Gracie Mews Diner," located at 1550 1st Avenue, New York, New York 10028.

10.    Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

11.    Gracie Mews LLC is an active New York corporation with its principal place of business at 1550 1st Avenue, New York, New York 10028.

12.    Gracie-Muse Restaurant Corp. (together with Gracie Mews LLC, the "Corporate Defendants") is an active New York corporation with its principal place of business 1550 1st Avenue, New York, New York 10028.

13.    Mihail Kreatsoulas ("M. Kreatsoulas") is an owner and operator of the Corporate Defendants.

14.    Steve Kreatsoulas ("S. Kreatsoulas" and, collectively with M. Kreatsoulas, the "Individual Defendants" and, with the Individual Defendants, the "Defendants") is an owner and operator of the Corporate Defendants.

15.    Upon information and belief, the Corporate Defendants operated together as a single business enterprise throughout the relevant time period.

16.    Upon information and belief, the Individual Defendants maintained operational control over and managed the Corporate Defendants by supervising and determining the wages and compensation of employees, establishing employees' work schedules, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiff.

17.    The Individual Defendants participated in the day-to-day operations of the

4

Corporate Defendants and acted intentionally in their direction and control of Plaintiff and the

Defendants' other similarly situated employees, and are each an "employer" pursuant to the FLSA,

29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder,

and are jointly and severally liable with the Corporate Defendants.

18.     At all relevant times, Defendants have been and continue to be employers engaged

in interstate commerce and/or the production of goods for commerce, within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

19.     At all relevant times, Defendants employed, and/or continue to jointly employ,

Plaintiff and each of the Collective Action members within the meaning of the FLSA.

20.     At all relevant times, Plaintiff, the opt-in plaintiffs and the Class Members were

employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

21.     Upon information and belief, at all relevant times, the Corporate Defendants have

had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff brings his First and Second

Cause of Action as a collective action under the FLSA on behalf of himself and the following

collective:

> All persons employed by Defendants at any time since July 13, 2018
> and through the entry of judgment in this case (the "Collective
> Action Period") who worked as non-management employees at
> Gracie Mews Diner (the "Collective Action Members").

23.     A collective action is appropriate in this circumstance because Plaintiff and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policy of failing to pay minimum wage for all hours worked, overtime premiums for work

performed in excess of forty (40) hours each week.  As a result of this policy, Plaintiff and the

Collective Action Members did not receive the legally-required minimum wage or overtime

premium payments for all hours worked in excess of forty (40) hours per week.

24.     Plaintiff and the Collective Action Members have substantially similar job duties

and are paid pursuant to a similar, if not the same, payment structure.

### FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

25.     Pursuant to the NYLL, Plaintiff brings his Third through Eighth Causes of Action

under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants in New York at any time since
> November 27, 2014 and through the entry of judgment in this case
> (the "Class Period") who worked as non-management employees at
> Gracie Mews Diner (the "Class Members").

26.     The Class Members are readily ascertainable. The number and identity of the Class

Members are determinable from the records of Defendants. For purposes of notice and other

purposes related to this action, their names and addresses are readily available from Defendants.

Notice can be provided by means permissible under Fed. R. Civ. P. 23.

27.     The Class Members are so numerous that joinder of all members is impracticable.

28.     Upon information and belief, there are well in excess of forty (40) Class Members.

29.     The questions of law and fact common to the Class predominate over any questions

solely affecting the individual members of the Class. These common questions include, but are not

limited to:

a.   whether Defendants employed Plaintiff and the Class Members within the

meaning of the NYLL;

b.   whether Defendants failed to keep true and accurate time records for all hours

6

worked by Plaintiff and the Class Members;

c.   whether Defendants failed and/or refused to pay Plaintiff and the Class Members the statutory minimum wage for all hours worked;

d.   whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e.   whether Defendants failed and/or refused to pay Plaintiff and the Class Members all wages due within seven (7) days following the end of a given workweek;

f.   whether Defendants failed to pay Plaintiff and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

g.   whether Defendants failed to provide Plaintiff and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

h.   whether Defendants failed to provide proper wage notice to Plaintiff and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

i.   whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

j.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

30.   Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like all Class

Members, was a restaurant employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, not paid the statutory minimum wage for all hours worked, overtime premium pay for hours worked over forty (40) hours in a given workweek or spread of hours premiums when he worked in excess of ten (10) hours in a given day; did not receive all wages due within seven (7) days after the end of a given workweek; and did not receive proper wage statements and wage notices.

31.    If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

32.    Plaintiff and his Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

33.    Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

34.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

35.    Defendants are sophisticated parties with substantial resources. The individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

36.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Diner

37.     Defendant Gracie Mews LLC was registered with the New York State Department of State, Division of Corporations on December 13, 2013.

38.     Defendant Gracie-Muse Restaurant Corp. was registered with the New York State Department of State, Division of Corporations on April 30, 1980.

39.     According to the New York State Department of State, Division of Corporations, Defendant Mihail (also listed as "Michael") Kreatsoulas is the Chief Executive Officer for Gracie-Muse Restaurant Corp.

40.     According to the New York State Liquor Authority, Division of Alcoholic Beverage Control, Defendant Mihail (aka Michael) Kreatsoulas owns the liquor license to Gracie-Muse Restaurant Corp. and as such is "responsible for the activities of employees and patrons in all parts of the licensed premises" and is "required to maintain adequate books and records of all the transactions involving [the] licensed business. This includes records recording [the licensee's] employees, whether full or part-time." (*See* State Liquor Authority, Retail Licensees Handbook, at 17).[1]

41.     According to Defendants' website at https://graciemewsdinernyc.com/, Gracie Mews Diner has operated "for more than 30 years."

42.     According to Defendants' website at https://graciemewsdinernyc.com/, Gracie Mews Diner is "open 24 hours a day, 7 days a week."

---

[1] Available at https://sla.ny.gov/system/files/documents/2019/09/State%20Liquor%20Authority-RetailLicensees%20Handbook_2019_forweb.pdf

43.     Upon information and belief, throughout the relevant time period, the Individual Defendants have been a daily presence at the diner, where they oversee the operations of the diner, supervise employees, discuss issues with and give orders to managers, resolve employee disputes, work with vendors and suppliers, and pay employees.

44.     Upon information and belief, at all times relevant, the Individual Defendants have held the power and authority to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiff's Work for Defendants**

45.     **Plaintiff Pablo Hernandez** was employed by Defendants at Gracie Mews Diner from in or around January 2019 through in or around August 2020, except for a period of approximately three (3) to four (4) months around mid to late 2019, when he was out of work due to an injury (the "Hernandez Employment Period").

46.     Throughout the Hernandez Employment Period, Hernandez worked as a line cook at several stations in the kitchen. He was also required to clean his station at the end of his shifts.

47.     From the beginning of the Hernandez Employment Period to in or around March 2020, Hernandez typically worked six (6) days per week with Fridays off. On Mondays through Thursdays, he typically worked from 3:00 pm to 1:00 am, and Saturdays and Sundays he typically worked from 3:00 pm to 3:00 am. In total, during this period, Hernandez typically worked between sixty-two and sixty-four (62-64) hours per week and sometimes more.  On days when business was slow, Defendants would sometimes send Plaintiff home approximately thirty (30) minutes early; during these periods, Plaintiff sometimes worked as few as approximately fifty-six (56) hours per week.

48.     In or around March 2020, due to the COVID-19 pandemic, Defendants reduced Hernandez's schedule. Beginning in or around March 2020 through the end of the Hernandez Employment Period, Hernandez typically worked from 3:00 pm to 11:00 pm between two (2) and four (4) days per week, for a total of between sixteen (16) and thirty-two (32) hours per week.

49.     Before approximately March 2020, Hernandez tracked his hours worked using a time clock and time cards. While Plaintiff tracked his time correctly, he is not aware of the manner in which Defendants calculated the hours shown on his paystubs. Beginning in or around March 2020, when Defendants' business was reduced due to COVID-19, Defendant S. Kreatsoulas instructed Hernandez and other employees not to punch their hours. Therefore, during this period, employees including Plaintiff were not provided with any means of tracking their time worked, and Plaintiff is not aware of the manner in which Defendants calculated his hours worked.

50.     When Hernandez was hired, Defendant S. Kreatsoulas informed Hernandez that he would be paid sixteen dollars ($16.00) per hour. The paystubs received by Plaintiff show a regular hourly rate of fifteen dollars ($15.00) per hour through in or around April or May 2020, which at that time increased to seventeen dollars ($17.00) per hour.

51.     For one month at the beginning of the Hernandez Employment Period, Hernandez was paid entirely in cash. Subsequently, and for the remainder of the Hernandez Employment Period, Hernandez was paid a portion of his wages in check and a portion in cash. At no time did Defendants explain to Plaintiff the manner in which they calculated the amount he was paid by check and the amount he was paid in cash, aside from informing him that he would be paid sixteen dollars ($16.00) per hour.

52.     During this period, Plaintiff Hernandez received a check and paystub that typically

showed between twenty and forty-five (20-45) hours worked, typically a round number such as 20, 30 or 40 hours, plus cash at his regular straight-time rates for the remainder of his hours worked. While his paystubs and checks sometimes indicated a small amount of overtime, most often 45 hours total, he typically worked significantly more hours, including overtime hours, than appeared on his paychecks. On extremely rare occasions, Plaintiff's paystubs reflected more hours, closer to his actual hours worked. However, typically Plaintiff's paystubs and checks reflected substantially fewer hours than he actually worked. As a result, throughout the Hernandez Employment Period, Hernandez did not receive overtime premiums consisting of one and one-half (1.5) times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

53.    Sometimes, particularly after March 2020, Defendants paid Plaintiff for one or more days fewer than he actually worked, such that his paystubs sometimes showed as few as ten (10) hours. During these periods, Plaintiff often handwrote on the back of his paystubs the true number of days he worked. As a result, during these weeks, Plaintiff's hourly rate fell below the statutory minimum rate.

54.    Hernandez did not receive any spread-of-hours premiums consisting of one (1) extra hour's pay at the applicable statutory minimum wage even though during much of his employment period he worked in excess of ten (10) hours per day at least two (2) days per week.

55.    Each week, Hernandez was required to sign a document in order to receive his pay. This document was provided to him in English, which he does not read or speak, and which was never explained to him.

56.    As a result of Defendants' practice of paying Hernandez a portion of his wages by check accompanied by a paystub, Hernandez's paystubs were typically inaccurate and showed

fewer hours and a lower total wage amount than he actually received.

57.     At no time during the Hernandez Employment Period did Hernandez receive a wage notice setting forth his regular and overtime rates, regular payday, any deductions or credits claimed by Defendants, employer contact information, or other information required by NYLL § 195(1)(a).

**Defendants' Unlawful Corporate Policies**

58.     Plaintiff and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay the statutory minimum wage, overtime premiums, and spread of hours premiums.

59.     Plaintiff has spoken with other employees of Defendants who were similarly not paid minimum wage for all hours worked, overtime premiums for hours worked over forty (40) each week, or spread of hours premiums for days when they worked in excess of ten (10) hours per day. Defendants' failure to pay Plaintiff minimum wage, overtime premiums or spread of hours premiums is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period.

60.     Defendants' pay practices resulted in Plaintiff and the Class Members not receiving all wages owed to them within seven (7) days after the end of a given workweek.

61.     Defendants have not provided Plaintiff or Class Members with accurate statements of wages containing the dates of work covered by their wage payments; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including

13

overtime hours worked if applicable; deductions; and net wages.

62.    Defendants have not provided Plaintiff or Class Members with proper wage notices at the time of hire, annually by February 1 of each year, or when their wage rate changed.

63.    Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiff in positions that require little skill and no capital investment.

64.    Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

65.    Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

66.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

67.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

68.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiff and the Collective Action Members are entitled to recover from Defendants their full

unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

69.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

70.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

71.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

72.     Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff and the Class Members)**

73.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

74.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

75.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Class Members)**

76.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

77.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

16

78.    Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS
**(Brought on Behalf of Plaintiff and the Class Members)**

79.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

80.    Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

81.    Defendants' failure to pay spread-of-hours compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW - FAILURE TO PAY WAGES**
**(Brought on Behalf of Plaintiff and the Class Members)**

82.      Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

83.      Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiff and the Class Members are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which wages are earned." Thus, Defendants violated NYLL § 191 by failing to pay Plaintiff and the Class Members all of their wages earned within the week such wages were due.

84.      Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiff and the Class Members, that is not otherwise authorized by law or by the employee.

85.      By withholding wages and overtime compensation from Plaintiff and the Class Members, pursuant to NYLL § 193 and the cases interpreting same, Defendants made unlawful deductions in wages owed to Plaintiffs and the Class Members.

86.      Defendants' failure to pay Plaintiff and the Class Members wages of any kind for several hours of work in certain weeks violated NYLL §§ 191 and 193.

87.      Defendants' failure to comply with NYLL §§ 191 and 193 caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants unpaid wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action

pursuant to NYLL §§ 663(1) *et seq.*

## SEVENTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES</u>
### (Brought on Behalf of Plaintiff and the Class Members)

88.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

89.     Defendants have willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

90.     Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendant fifty dollars ($50) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**EIGHTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought on Behalf of Plaintiff and the Class Members)**

91.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

92.      Defendants have willfully failed to supply Plaintiff and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

93.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.     Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class;

c.     An order tolling the statute of limitations;

d.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.     An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.     An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

21

h.  An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

i.  Fifty dollars ($50) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.  Two hundred and fifty dollars ($250) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.  An award of prejudgment and post-judgment interest;

l.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
        July 13, 2021

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
    Brent E. Pelton (BP 1055)

22

Pelton @PeltonGraham.com
Taylor B. Graham (TG 9607)
Graham@PeltonGraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative FLSA*
*Collective and Class*

### Notice of Shareholder Liability for Services Rendered
### Pursuant to § 630 of the Business Corporation Law of New York

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholder of **GRACIE MEWS LLC** and **GRACIE-MUSE RESTAURANT CORP.** are hereby notified that the plaintiff in this matter, individually and on behalf of the putative FLSA collective and the Class he seeks to represent, intends to enforce your personal liability, as the ten (10) largest shareholders of **GRACIE MEWS LLC** and **GRACIE-MUSE RESTAURANT CORP.** and charge you with indebtedness of said corporations to the plaintiffs for services performed for the corporations as employees during the six (6) year period preceding the filing of the complaint.

Services for the above-referenced corporations concluded for Plaintiff within the past 180 days.

Dated:  July 13, 2021

_____
Brent. E. Pelton

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Gracie-Muse Restaurant Corp. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and prevailing wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

_____
Printed Name     *Pablo Hernandez C.*

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Gracie-Muse Restaurant Corp. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_____
Nombre Escrito     *Pablo Hernandez C.*

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.