# PELTON GRAHAM LLC

ADVOCATES FOR JUSTICE

October 14, 2021

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA ECF**

Hon. J. Paul Oetken
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

      Re:   *Pablo Hernandez v. Gracie Mews LLC, et al.*
              No. **21-cv-06019** (**JPO**)

Dear Judge Oetken:

      This office represents named plaintiff Pablo Hernandez ("Hernandez" or "Plaintiff"). We write, jointly with counsel for Gracie Mews LLC, Gracie-Muse Restaurant Corp., Steve Kreatsoulas, and Mihail Kreatsoulas (the "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and Your Honor's September 13, 2021 Order. (Dkt. No. 18). Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.**     **Procedural History and Settlement Negotiations**

      Plaintiff commenced this action by filing his Class & Collective Action Complaint in this Court on July 13, 2021. (Dkt. No. 1 (the "Complaint")). On the day that the Complaint was filed, counsel for Defendants contacted Plaintiff's counsel to discuss waiver of service and an interest in engaging in early settlement negotiations. To that end, the Defendants executed Waivers of Service, providing a deadline to respond to the Complaint of September 13, 2021. (Dkt. Nos. 13-16).

      To facilitate the settlement negotiations, Plaintiff's counsel exchanged with Defendants' counsel a damages computation spreadsheet and initial demand, and Defendants provided payroll records of payments made to Plaintiff via check.

      After several rounds of discussions relating to Plaintiff's damages computation, disputes regarding the Plaintiff's dates of employment and hours worked, and Defendants' financial condition, on September 13, 2021, the parties were able to come to an agreement regarding a monetary settlement of Plaintiff's claims. Defendants informed the Court regarding the parties' settlement in principle and sought adjournment of their deadline to respond to the Complaint. (Dkt.

No. 17). Over the next several weeks, the parties exchanged a draft of the settlement agreement and continued to negotiate over certain terms, including timing of the settlement payments. Ultimately, the parties finalized and executed the Settlement Agreement submitted herewith.

## II.     The Settlement Accounts for Litigation Risk

The parties have bona fide disputes regarding issues of fact at the core of Plaintiff's claims; particularly, the number of hours alleged to have been worked by Plaintiff and the accuracy of the time and wage records produced by the Defendants. Plaintiff alleges that, prior to the Covid-19 pandemic in March 2020, he typically worked six (6) days per week, between ten and twelve (10-12) hours per day, for an average of between sixty-two and sixty-four (62-64) hours per week. Plaintiff further alleges that on some occasions when the restaurant was slow, Defendants would send him home early, such that he would work approximately fifty-six (56) hours in the week. Thereafter, from March 2020 through the end of Plaintiff's employment in August 2020, Plaintiff alleges that he typically worked between two (2) and four (4) days per week, for a total of between sixteen and thirty-two (32) hours. While Plaintiff alleges that he was required to clock in and out in a time clock prior to March 2020, and was paid for most of the hours that he clocked, he alleges that beginning in March 2020 Defendants instructed him not to clock in or out and therefore paid him based on the schedule, rather than his actual hours worked. The Defendants deny that Plaintiff worked any time for which he was not compensated and allege that they paid Plaintiff for more hours than he was working during the pandemic, since the restaurant typically was not busy enough for Plaintiff to work his full scheduled hours. Furthermore, Defendants maintain that their time and pay records are accurate and demonstrate that Plaintiff was paid correctly, including overtime premiums for hours worked over 40 in a given workweek.  Defendants also maintain that Plaintiff's alleged dates of employment are inaccurate because their records show Plaintiff working from June 2019 through August 2019 and then again from mid-January 2020 through July 2020, instead of the employment period that Plaintiff alleges to have worked.  Plaintiff alleges that the records produced are inaccurate because he worked for a period off-the-books and that the records credit Plaintiff for significantly fewer hours than he actually worked.

While Plaintiff believes that a factfinder would credit his testimony over that of Defendants and Defendants' records, Plaintiff recognizes that existing time and pay records could potentially limit the amount of damages he could recover at trial if a factfinder credited Defendants' testimony and records in their entirety.

As mentioned above, Plaintiff created and exchanged with Defendants a damages analysis based upon Plaintiff's best recollection regarding his total hours worked and wages received. (Pelton Aff. ¶ 7). In total, Plaintiff's damages analysis calculated $36,048.08 in damages, including $1,500.00 in unpaid minimum wage, $8,182.50 in unpaid overtime premiums, $1,740.00 in unpaid spread of hours premiums, $10,000.00 in wage notice and wage statement damages, $11,422.50 in liquidated damages (i.e., 100% of the unpaid wages) and $3,203.08 in prejudgment interest on the NYLL claims. (*Id.*).

Although there is a possibility that Plaintiff could recover higher damages if the case proceeded through formal discovery and trial, there is also the possibility that he would receive much lower damages, or nothing at all. As mentioned above, the parties have bona fide disputes as to the facts and merits of Plaintiff's claims and the accuracy of Defendants' records. Accordingly, Plaintiff prefers to settle now for an amount that he would be guaranteed to receive under the terms of the settlement.

The parties believe that the settlement amount (i.e., $17,500.00) is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding to trial. Here, Plaintiff's recovery represents more than his "actual" unpaid wage damages and over 48% of his total best case scenario damages, including penalties and interest.

### III.    Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $17,500.00 (the "Settlement Amount"). Of the Settlement Amount, $6,101.33 is payable to Plaintiff's counsel (consisting of $402.00 in expense reimbursements and $5,699.33 in attorneys' fees). The remaining $11,398.67 is payable directly to Plaintiff (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiff signed the Settlement Agreement. *See* Ex. A § 4.  The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision between Plaintiff and Defendants. *See* Ex. A § 9.  The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiff and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses.  *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17,

Hon. J. Paul Oetken
FLSA Settlement Fairness Letter
Page **4** of **6**

    2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable costs in the event that they prevail.

### IV.    Plaintiff's Attorneys' Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., as of October 14, 2021, Plaintiff's counsel has spent more than 44.5 hours in prosecuting and settling this matter, resulting in a lodestar of $10,335.83. *See* Pelton Aff. Ex. C. Plaintiff's counsel has spent $402.00 in actual litigation costs, for the filing of the Complaint. *Id.* at Ex. D. The portion of the settlement amount that Plaintiff seeks as attorneys' fees (i.e., $6,101.33) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, falls below the lodestar amount and is consistent with what was agreed upon between the Plaintiff and his counsel in his retainer agreement.

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern and Southern Districts of New York. In fact, the same rates have been approved in connection with recent wage and hour default judgments in the Eastern and Southern District of New York. *See Guinea v. Garrido Food Corp*., No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate

time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."); *Campos v. BKUK 3 Corp*, No. 18-cv-4036 (JGK)(KHP), Dkt. No. 156 (Report and Recommendation) (S.D.N.Y., Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates). Accordingly, Plaintiff's counsel submits that the attorneys' fees component of the settlement is fair and reasonable.

### V. The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer or any collusion. To the contrary, the settlement was the result of vigorous arm's-length negotiations and exchange of damages and documents. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiff, including records produced by Defendants and disputed merits issues. Due to several disputed issues of fact, the parties would likely need to engage in formal discovery including depositions, as well as motion practice, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

\*     \*     \*     \*     \*

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

| | |
|---|---|
| By: */s/ Brent E. Pelton* | By: */s/ Matthew A. Brown* |
| Brent E. Pelton, Esq. | Matthew A. Brown, Esq. |
| Taylor B. Graham, Esq. | Richard I. Millman, Esq. |
| **PELTON GRAHAM LLC** | **Milman Labuda Law Group PLLC** |
| 111 Broadway, Suite 1503 | 3000 Marcus Avenue, Suite 3W8 |
| New York, New York 10006 | Lake Success, New York 11042 |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

Enclosure